United HealthCare Insurance Company,
doing business as Evercare,

                Plaintiff,

v.

Kathleen Sebelius,
Secretary, Department of Health
and Human Services, and

Michael P. Starkowski,
Commissioner, Connecticut Department
of Social Services,

                Defendants.

**MEMORANDUM OF LAW &
ORDER**
Civil File No. 09-01927 (MJD/JSM)

---

Michael J. Vanselow and Archana Nath, Oppenheimer Wolff & Donnelly LLP,
Counsel for Plaintiff.

Friedrich A. P. Siekert, United States Attorney's Office, Counsel for Defendant
Sebelius.

Andrea Rubenstein, Schaffer Law Firm, LLC and Abigail C. Sheehan, Gill
Deford, Judith A. Stein, Margaret M. Murphy, Nancy Gifford, Center for
Medicare Advocacy, Inc., Counsel for Defendant Starkowski.

## I. INTRODUCTION

This matter is before the Court on Defendant Starkowski's Motion for Summary Judgment [Docket No. 46]; Defendant Sebelius' Motion for Summary Judgment [Docket No. 51]; and Plaintiff's Motion for Summary Judgment [Docket No. 53]. The Court heard oral argument on Friday, October 15, 2010.

## II. SUMMARY OF COURT'S OPINION

After considering the documents filed, and the oral arguments, the Court will grant Defendant Starkowski's Motion for Summary Judgment and Defendant Sebelius' Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment. The Court finds that for the dates in question the enteral feedings administered to the Medicare beneficiary were coverable as posthospital Special Nursing Facility care. The Court bases its ruling on the fact that for all the dates in question the substantial evidence supports the Secretary's final decisions that the beneficiary's enteral feedings met the requirements used to determine whether services qualify for Medicare posthospital Special Nursing Facility care.

## III.  BACKGROUND

### A.  Factual Background

#### 1.  Parties

Plaintiff is United HealthCare Insurance Company, d/b/a Evercare ("United").  United's principal place of business is Minnetonka, Minnesota. Defendants are Kathleen Sebelius, Secretary of Health and Human Services ("Secretary"), and Michael Starkowski, the Commissioner of the Connecticut Department of Social Services ("Commissioner").  This case is a consolidated appeal by United of two final decisions of the Department of Health and Human Services' Medicare Appeals Council ("MAC") concerning the insurance coverage of Robert Bushnell ("Bushnell").  The Secretary is the proper defendant for such an appeal.  42 C.F.R. § 405.1136(d)(1).  Additionally, the Commissioner has asserted subrogation rights in the present case under 42 U.S.C. § 1396a(a)(25) and 42 C.F.R. § 405.908, and is thus also a proper defendant.

#### 2.  Bushnell Medical History and Coverage

During the relevant times, Bushnell was an 86 year old man.  He was covered by a Medicare Advantage ("MA") Policy through United which was effective as of January 1, 2008.  In July 2007, Bushnell was admitted to a nursing

home called the Summit at Plantsville, ("Summit") a skilled nursing facility

("SNF").    Bushnell had an enteral gastric feeding tube ("g-tube") at the time he

was first admitted to Summit, and from this point on Bushnell was entirely

dependent on the g-tube for nutrition.

On February 21, 2008, Bushnell was admitted to the hospital due to chest

pains.  Bushnell was treated for pneumonia.  Bushnell was discharged from the

hospital and returned to Summit on February 28, 2008.  Upon his reentry to

Summit, Bushnell received a wide range of services including physical and

occupational therapy, g-tube feeding, oxygen therapy, medication

administration, as well as many others.  At this time Bushnell's physician

certified that Bushnell required skilled nursing care.  On February 29, 2008,

Bushnell's occupational therapist noted that he had reached his maximum

functional potential, and on March 3, 2008, Bushnell's physical therapist

concluded that he was at "PLOF" (prior level of functioning).

On March 10, 2008, Bushnell's condition was reported "stable" by the staff,

and his physician noted that he was "on baseline respiratory status."  After

March 11, 2008, Bushnell's nurses were no longer characterizing his condition as

"acute."  On March 10, 2008, United notified Bushnell's power of attorney that

his Medicare coverage for his SNF care would terminate on March 12, 2008, and advised him of his right to appeal.

In July 2008, Bushnell was once again diagnosed with pneumonia. On July 23, 2008, Bushnell was diagnosed with aspiration pneumonia and chronic respiratory failure. United again began paying for skilled nursing services for Bushnell. On July 31, 2008, United notified Bushnell's power of attorney that it was going to discontinue payment for skilled nursing services as of August 1, 2008. Bushnell's physician certified on August 2, 2008 that Bushnell required care "at SNF level of care" for 30 days. Although it was believed that Bushnell had recovered, on August 19, 2008, he suffered a recurrence of his pneumonia symptoms. United again began to cover the skilled nursing services, and continued to do so until August 30, 2008. United then notified Bushnell's power of attorney that the Medicare coverage for skilled nursing services would end August 30, 2008.

**B.    Procedural Background**

**1.    First Bushnell MAC Decision**

Bushnell did not appeal United's decision to terminate his Medicare SNF coverage on March 12, 2008. On April 24, 2008, the Commissioner requested that United reconsider its decision not to provide Bushnell with SNF coverage from

March 13, 2008, to March 31, 2008.  United upheld its decision, and on June 26, 2008, forwarded the file to Maximus Federal Services, Inc. ("Maximus") for independent review of the Commissioner's appeal.  On August 26, 2008, Maximus upheld United's decision not to extend SNF coverage to the dates in question, and notified the Commissioner of the right to appeal Maximus' decision to an Administrative Law Judge ("ALJ").

The Commissioner appealed Maximus' decision to an ALJ.  On December 9, 2008, there was a hearing before U.S. ALJ Jordan R. Garelick.  The ALJ upheld United's decision not to extend coverage in a decision dated December 11, 2008.

The Commissioner appealed the ALJ's decision to the MAC on February 5, 2009.  On May 21, 2009, the MAC reversed the ALJ's decision and stated that Bushnell's enteral feedings at the Summit from March 13, 2008 to March 31, 2008 were skilled nursing services coverable by Medicare.  On June 23, 2010, United appealed the MAC's decision by filing a complaint with this Court pursuant to 42 U.S.C. §§ 405(g) and 1395w-22(g)(5).  [Docket No. 1].

## 2.      Second Bushnell MAC Decision

On September 4, 2008, the Commissioner appealed United's decision not to provide SNF Medicare coverage for the period from August 2, 2008 to August

18, 2008, and August 31, 2008.  United reconsidered and upheld its non-coverage decision and forwarded the matter to Maximus for an independent review. Maximus upheld United's denial of coverage in a December 22, 2008 decision.

The Commissioner appealed Maximus' decision on February 5, 2009, and requested a hearing in front of an ALJ.  On May 28, 2009 U.S. ALJ Gary D. Smith reversed the decisions of United and Maximus, stating that United was responsible for paying for the services between August 2, 2008 and August 18, 2008, and August 31, 2008.

On July 31, 2009, United appealed the ALJ decision to the MAC.  In its November 16, 2009 decision, the MAC affirmed the ALJ's decision.  The MAC held that Bushnell's enteral feedings at Summit from August 1, 2008 to August 18, 2008, and on August 31, 2008, were skilled nursing services coverable by Medicare. On December 8, 2009, United appealed the MAC's decision by filing a second complaint with this Court pursuant to 42 U.S.C. §§ 405(g) and 1395w-22(g)(5).  [Docket No. 39].

### 3.    Consolidation

On December 9, 2009, there was a stipulation by the parties to consolidate both appeals by United.  [Docket No. 28]  On December 16, 2009 the second

appeal was reassigned to this Court, as it was presiding over the first appeal, and

the cases were consolidated under Civil No. 09-1927. [Docket Nos. 30, 31]

## IV.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine issue as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion."

Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

### B.    Standard of Review

The Medicare Act allows for a limited review of the Secretary's final

decision with regard to Medicare coverage.  42 U.S.C § 405(g) (incorporated

through 42 U.S.C § 1395w-22(g)(5)).  In reviewing the Secretary's final Medicare

coverage decision a district court is to use the "substantial evidence" standard.

Id. (incorporated through 42 U.S.C § 1395w-22(g)(5)).  Section 405(g) states, "[t]he

findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ." Id. "Substantial evidence is less

than a preponderance, but is enough that a reasonable mind would find it

adequate to support the [Secretary's] conclusion." McKinney v. Apfel, 228 F.3d

860, 863 (8th Cir. 2000). This standard requires the district court to look at the

substantial evidence on the record as a whole and "take into account record

evidence which fairly detracts" from the MAC's decision. Tilley v. Astrue, 580

F.3d 675, 679 (8th Cir. 2009) (citation omitted).

Where, however, there is an issue of statutory interpretation, a court "must

determine whether the proper legal standards were employed" by the Secretary.

Horras v. Leavitt, 495 F.3d 894, 900 (8th Cir. 2007) (citations omitted). When

there is an issue of statutory interpretation, courts must first look to the language

of the statute, and if the language is clear courts must enforce the statute by the

plain language. Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (citation omitted).

"If there is an ambiguity in a statute that an agency has been entrusted to

administer, however, the agency's interpretation is controlling when embodied

in a regulation, unless the interpretation is 'arbitrary, capricious, or manifestly

contrary to the statute.'" Hennepin Cnty. Med. Ctr. v. Shalala, 81 F.3d 743, 748

(8th Cir. 1996) (quoting <u>Chevron, U.S.A., Inc. v. Natural Resources Def. Council,</u>

<u>Inc.</u>, 467 U.S. 837, 843-44 (1984)).

### C. Medicare SNF Coverage Criteria

The statute governing Medicare, 42 U.S.C. § 1395 <u>et</u> <u>seq.</u>, is essentially

broken up into four parts: Part A, which describes certain inpatient services, as

well as other services, covered by Medicare; Part B, an optional insurance

program that helps to pay for certain outpatient services; Part C, formerly known

as Medicare+ Choice, allows beneficiaries to receive their Part A and Part B

benefits through a MA organization, such as United; and Part D, which provides

beneficiaries coverage for prescription drugs.

In this case, Bushnell had a MA policy with United governed by Part C of

the Medicare Act, which allows for beneficiaries to receive their benefits from a

Medicare Advantage organization, such as United, who contracts with the

Government to provide Medicare benefits to beneficiaries.  42 U.S.C. §§ 1395w-21

– 1395w-28.   Under such a plan, at a minimum, the beneficiary must receive the

benefits covered by Medicare Part A and Part B.  <u>Id.</u> § 1395w-22(a); 42 C.F.R. §

422.100.  One of the benefits covered under Part A of the Medicare Act is post-

hospital extended care services for up to 100 days.  42 U.S.C. § 1395d(a)(2)(A).

Generally, a beneficiary is eligible for post-hospital extended care services after a qualifying 3 day hospital stay. 42 C.F.R. § 409.30. However, an MA plan may elect to provide coverage of posthospital SNF care without requiring a prior hospital stay. Id. § 422.101(c). Bushnell's plan did in fact waive the required hospital stay. Furthermore, in order to be able to receive this coverage, a beneficiary must meet certain requirements. Id. §§ 409.30 – 409.35. More specifically, the beneficiary must (1) require skilled nursing or rehabilitative services, (2) on a daily basis, (3) the services must be furnished for a condition for which the beneficiary received inpatient services, for a condition which arose while the beneficiary was receiving care in an SNF for a condition for which the beneficiary was hospitalized, or, for MA beneficiaries whose plans waive the 3 day hospital stay requirement, for a condition for which a physician has determined that direct admission to an SNF was medically appropriate without a prior hospital stay, and (4) the services must be such that as a practical matter they can only be provided at an SNF on an inpatient basis. Id. § 409.31.

42 C.F.R. § 409.33(b) notes certain services which qualify as skilled services. One such service is "[e]nteral feeding that comprises at least 26 per cent

of daily calorie requirement and provides at least 501 milliliters of fluid per day."

Id. § 409.33(b)(2).

Additionally, 42 C.F.R. § 409.30(b)(2)(ii) describes an exception that explains that certain requirements are deemed to be satisfied for a beneficiary, such as Bushnell, who is enrolled in an MA plan which waives the requisite 3 day hospital stay.  The section states:

> [i]f, upon admission to the SNF, the beneficiary was enrolled in a [MA] plan, as defined in § 422.4 of this chapter, offering the benefits described in § 422.101(c) of this chapter, the beneficiary will be considered to have met the requirements described in paragraphs (a) and (b) of this section, and also in § 409.31(b)(2), for the duration of the SNF stay.

Id. § 409.30(b)(2)(ii).

Finally, Medicare coverage, in general, does not extend to custodial care. 42 U.S.C. § 1395y(a)(9) ("Notwithstanding any other provision of this subchapter, no payment may be made under part A or part B of this subchapter for any expenses incurred for items or services . . . where such expenses are for custodial care.").  Custodial care is defined in the regulations as "any care that does not meet the requirements for coverage as SNF care as set forth in §§ 409.31 through 409.35 of this chapter."  42 C.F.R. § 411.15(g).

**D.     Skilled Nursing Services**

As stated in 42 C.F.R. § 409.33(b)(2), enteral feeding which is greater than 26 per cent of a beneficiary's daily caloric intake, and which provides at least 501 milliliters of fluid per day qualifies as a skilled nursing service.  It is not disputed that Bushnell received nutrition through his g-tube in an amount greater than the requirements of 42 C.F.R. § 409.33(b)(2).  Bushnell received 100 percent of his nutrition through g-tube feedings, and the total amount of liquid received each day was 1700cc, which is equal to 1700 milliliters.  Thus, the Court finds that the requirement that Bushnell receive skilled nursing services is met for all the dates in question.

**E.     Furnished on a Daily Basis**

United argues that for the enteral feeding to qualify as a skilled service it must have been furnished "directly by, or under the supervision of" RNs or LPNs on a daily basis.  42 C.F.R. § 409.31(a).  United contends that the substantial evidence on the record as a whole does not support the MAC's finding that the required skilled personnel administered the enteral feedings in question on a daily basis.  United states that although the certified nursing assistants made daily notes regarding Bushnell's enteral feeding, they are not among the

personnel listed in the regulations.  United argues that the RNs' and LPNs' notes show that the RNs and LPNs checked Bushnell's g-tube on less than one-third of the days in question.

Defendants argue that Bushnell's g-tube feedings are per se skilled services pursuant to 42 C.F.R. § 409.33(b)(2), because Bushnell's tube feedings meet the requirements of 26 per cent of his daily caloric requirements and at least 501 milliliters of fluid per day.  Defendants contend that Bushnell's feedings meet the definition of skilled nursing services under the applicable regulations, and there does not need to be a determination of who administered the services. Defendants state that the only thing that must be shown in this case is that these services were furnished on a daily basis.

This Court need not make a ruling on whether enteral feedings which meet the requirements of 42 C.F.R. § 409.33(b) are skilled services regardless of who administered the feedings, because the record as a whole supports the fact that the g-tube services were performed on a daily basis by RNs or LPNs.  The medication flow charts show the RNs and LPNs who administered the g-tube services during the dates in question.  These charts show who administered the services for each shift with initials which can be matched with a corresponding

RN or LPN by using a chart which identifies the nurses by their initials.  These

charts show that on all the days in question, a RN or LPN performed the g-tube

services.  Furthermore, the charts show which nurse was responsible for the

physician ordered services, when and by whom the tube was turned on for

feedings, and when and by whom the tube was turned off.  When employing the

"substantial evidence" standard to the finding of facts of the MAC, the record

supports that Bushnell received daily enteral feedings furnished by or under the

supervision of RNs and LPNs.  The medication flow charts and corresponding

initial charts provide enough evidence "that a reasonable mind would find it

adequate to support the [Secretary's] conclusion."  McKinney, 228 F.3d at 863.

Accordingly, the Court finds that, for all the dates in question, the requirement

that the services be furnished on a daily basis is met.

### F.     For a Condition for which Patient Received Inpatient Services

United argues that the MAC, in making its decisions, did not properly

examine all of the necessary requirements which must be met in order for SNF

services to be covered by Medicare.  United states that the failure to consider all

the requirements equates to a legal error of statutory interpretation.  United

contends that the appropriate standard of review for this error is a consideration

of whether the MAC employed the proper legal standards, not the substantial evidence standard. United argues that a central element of the coverage analysis is that the SNF services are furnished for the condition for which the beneficiary was hospitalized. See 42 C.F.R. § 409.31(b)(2)(1). United further argues that where an MA plan waives the required hospital stay for SNF coverage, as Bushnell's plan did, Medicare only covers services furnished for a condition for which a physician determined immediate admittance to an SNF was appropriate. 42 C.F.R. § 409.31(b)(2)(iii).

United contends that in the first Bushnell decision by the MAC, the requirements of 42 C.F.R. § 409.31(b)(2) were considered but incorrectly applied. The MAC determined that Bushnell "undoubtedly received tube-feeding for his conditions while hospitalized." United urges that 42 C.F.R. § 409.31(b)(2) requires not simply that the g-tube feedings were furnished while Bushnell was hospitalized, but rather that he received g-tube feedings for a condition for which he was hospitalized. Moreover, United states that the MAC, in its second decision, failed to acknowledge that the requirement of 42 C.F.R. § 409.31(b)(2) was satisfied at all. United argues that in the second Bushnell case, the MAC

simply concluded that since he received the required quantity of feeding under 42 C.F.R. § 409.33(b)(2), he was entitled to Medicare SNF coverage.

The Court finds that the MAC, through its decisions, as well as by adopting parts of the ALJ decisions, fully considered all the requirements necessary for Medicare SNF benefit coverage, and thus no error of law exists. In the first Bushnell decision, the MAC found that the g-tube services were skilled services which were covered by Medicare. Further, the MAC specifically found that Bushnell's g-tube feedings were furnished for a condition for which he was hospitalized. The MAC also considered United's other arguments, and found them unpersuasive. In the second Bushnell decision, the MAC again found that the services qualified as skilled services covered by Medicare. Additionally, the MAC considered United's other contentions and found no reason to disturb the ALJ's decision. In the Principles of Law Section of the ALJ decision, the ALJ clearly identified all of the requirements necessary for posthospital skilled nursing services to be covered by Medicare. Moreover, the ALJ stated that "[i]t is obvious that the provision of that feedings was necessary for the treatment and health of the beneficiary." By adopting these portions of the ALJ's decision, the MAC made a finding that the feedings were furnished for a condition which

Bushnell's physician deemed it appropriate to immediately admit Bushnell to Summit, and thus all the necessary requirements were considered by the MAC with regard to the second set of dates. Since all the necessary requirements were considered by the MAC in both its decisions there is no legal error, and the correct standard of review is the substantial evidence standard.

United argues that the substantial evidence on the record does not show that Bushnell's g-tube feedings were administered for a condition which he was hospitalized or immediately admitted to SNF level care. For the first dates in question, Bushnell was admitted to the hospital for trouble breathing and pneumonia. United contends that once Bushnell recovered from his pneumonia United was no longer responsible for covering the enteral feedings. United suggests that the g-tube feedings in question were not related to the hospital visit, but rather were custodial care, not coverable by Medicare. 42 U.S.C. 1395y(a)(9).

With regard to the second set of dates in question, United argues that although Bushnell was admitted directly to the skilled nursing care at Summit without a prior hospital stay as allowed by his MA plan, SNF services are coverable by Medicare only to the extent that those services are furnished for the

condition for which immediate admittance to Summit was deemed appropriate. 42 C.F.R. § 409.31(b)(2)(iii). Again, United argues that the services related to the Bushnell's pneumonia were coverable by Medicare, but once Bushnell was restored to his "baseline respiratory status," his g-tube feedings should not have been covered by Medicare.

Contrary to United's arguments, the Court finds that the record as a whole contains substantial evidence to support the contention that, with regard to the first set of dates, Bushnell received skilled nursing services for a condition related to his hospitalization and subsequent treatment at Summit. The record shows Bushnell's need for g-tube feedings stems from a July 2007 stroke Bushnell experienced which resulted in his inability to chew or swallow. This inability to chew and swallow subsequently led to respiratory problems for which he was hospitalized in February 2008. Bushnell's physician ordered nursing care for the evaluation and optimization of Bushnell's nutritional status and for Bushnell's feeding tube. Moreover, the physician certified that the care was for a condition for which Bushnell was hospitalized. The g-tube services were thus furnished for this inability to chew and swallow, for which Bushnell was hospitalized.

Moreover, the record provides substantial evidence that Bushnell's g-tube dependence also led to the problems in July and August of 2008. The record shows that for both Bushnell's initial spell of illness, and his recurrence, the diagnosis was "Pneumonitis due to inhalation of food or vomitus." Bushnell's physician once again certified that Bushnell needed to receive SNF care. Furthermore, United's physician testified that Bushnell had aspirational pneumonia, likely caused by the fact that he cannot swallow, the reason Bushnell required enteral feedings. Thus, the record provides substantial evidence that the g-tube feedings provided from August 2 to August 18, 2008, and August 31, 2008 are coverable because the feedings were administered for the aspiration pneumonia Bushnell suffered, due to his inability to swallow and chew.

Since, for all dates in question, the substantial evidence supports the Secretary's decision that Bushnell received his services for a condition for which he was hospitalized or immediately admitted to SNF care, the Court finds that the enteral feedings administered to Bushnell met the requirements of 42 C.F.R. § 409.31(b)(2).

Defendants made alternative arguments, contending that the requirements of 42 C.F.R. § 409.31(b)(2) did not apply to Bushnell because he was enrolled in

an MA plan which waived the three day hospital stay requirement.  Among

these arguments is the Commissioner's contention that Bushnell met the

requirements of 42 C.F.R. § 409.31(b)(2) through the exception found in 42 C.F.R.

§ 409.30(b)(2)(ii).  As the Court finds that the substantial evidence on the record

as a whole supports the Secretary's decision, the Court need not make a

determination on these arguments.

### G.      Services as a Practical Matter Can Only Be Provided in an SNF

The Commissioner and the Secretary both contend that the substantial

evidence on the record supports the fact that the g-tube feedings were services

which, as a practical matter, could only be provided in an SNF on an inpatient

basis.  The regulations explain that in determining whether a service can, as a

practical matter, only be provided in an SNF, one needs to consider the

individual patient's physical condition and if there are any feasible and available

alternative facilities or services which are more economical.  42 C.F.R. § 409.35(a).

United made no argument either in its briefs or at oral argument contesting that

the g-tube services that Bushnell received on the dates in question could only be

performed at an SNF.  Thus, the Court finds that this requirement is met for all

the dates in questions.

**H.     Exhaustion of 100 Days of SNF Benefits**

United argues that the construction of Medicare's SNF benefits that the Commissioner puts forth could be very detrimental to Medicare beneficiaries because it would cause them to more quickly exhaust their limit of 100 days of SNF benefits under 42 C.F.R. § 409.61(b).  Whether or not Medicare coverage of a beneficiary like Bushnell could be detrimental is beyond the scope of the case at hand.  For the dates in question, Bushnell met all the requirements and had not yet reached his 100 day limit, thus his services are coverable by Medicare.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendant Sebelius' Motion for Summary Judgment [Docket No. 51] is **GRANTED**.

2.     Defendant Starkowski's Motion for Summary Judgment [Docket No. 46] is **GRANTED**.

3.     Plaintiff's Motion for Summary Judgment [Docket No. 53] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  January 7, 2011                              s/ Michael J. Davis
                                                    Michael J. Davis
                                                    Chief Judge
                                                    United States District Court